**Opinion filed January 30, 2009**



In The

# Eleventh Court of Appeals

_____

## No. 11-07-00334-CR

_____

## SHERRY LYNN SLOUGH, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 238th District Court**
**Midland County, Texas**
**Trial Court Cause No. CR31281**

### O P I N I O N

The jury convicted Sherry Lynn Slough of the state jail felony offense of credit card abuse. The trial court assessed appellant's punishment at confinement for twelve months in the State Jail Division of the Texas Department of Criminal Justice. In two issues, appellant challenges the legal and factual sufficiency of the evidence to support her conviction. We affirm.

*Background*

The State charged appellant with credit card abuse under Section 32.31(b)(4) of the Penal Code. TEX. PENAL CODE ANN. § 32.31(b)(4) (Vernon Supp. 2008). Section 32.31(b)(4) provides that a person commits an offense if "he steals a credit card." The term "credit card" is defined as "an

identification card, plate, coupon, book, number, or any other device authorizing a designated person or bearer to obtain property or services on credit," and "[t]he term includes the number or description of the device if the device itself is not produced at the time of ordering or obtaining the property or service." TEX. PENAL CODE ANN. § 32.31(a)(2) (Vernon Supp. 2008). The indictment alleged that, on or about December 14, 2004, appellant "did then and there intentionally and knowingly steal a credit card, to-wit: an MBNA MasterCard number . . . belonging to Nancy Egan from Nancy Egan."

The State reindicted appellant with credit card abuse under Section 32.31(b)(1)(A) of the Penal Code. TEX. PENAL CODE ANN. § 32.31(b)(1)(A) (Vernon Supp. 2008). Section 32.31(b)(1)(A) provides that a person commits an offense if, "with intent to obtain a benefit fraudulently, he presents or uses a credit card or debit card with knowledge that: the card, whether or not expired, has not been issued to him and is not used with the effective consent of the cardholder." Later, the State moved to dismiss the reindictment, and the State proceeded to trial on the original indictment. The trial court instructed the jury on the original indictment.

In her brief, appellant acknowledges that the evidence was sufficient to show that she presented or used Egan's credit card without authorization and that, therefore, the evidence would have supported a conviction for the offense alleged in the reindictment. However, because the State proceeded to trial under the original indictment, the State was required to prove that appellant stole the credit card. Appellant contends that the evidence was legally and factually insufficient to show that she stole the credit card.

*Standard of Review*

To determine if the evidence is legally sufficient, the appellate court reviews all of the evidence in the light most favorable to the verdict and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *Jackson v. State*, 17 S.W.3d 664, 667 (Tex. Crim. App. 2000). To determine if the evidence is factually sufficient, the appellate court reviews all of the evidence in a neutral light. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006) (overruling in part *Zuniga v. State*, 144 S.W.3d 477 (Tex. Crim. App. 2004)); *Johnson v. State*, 23 S.W.3d 1, 10-11 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407-08 (Tex. Crim. App. 1997); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). Then, the reviewing court determines whether the evidence supporting the verdict

is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Watson*, 204 S.W.3d at 414-15; *Johnson*, 23 S.W.3d at 10-11. The jury, as the finder of fact, is the sole judge of the weight and credibility of the witnesses' testimony. TEX. CODE CRIM. PROC. ANN. art. 36.13 (Vernon 2007), art. 38.04 (Vernon 1979).

*Evidence at Trial*

In late 2004 and early 2005, Nancy Rapp had an MBNA MasterCard. The card was issued to Nancy in her prior name, Nancy Egan. Nancy identified the card by its number during her testimony. In early 2005, Nancy discovered that unauthorized charges totaling $3,501.13 had been made on the card when she examined the statement for the card. The charges had been posted during December 2004 and January 2005. The evidence showed that the charges had been made to Overstock.com, Reliant Energy, 911 Health Shop.com, Travelocity, Virgin Mobile, Amazon.com, Wal-Mart.com, Southwest Airlines, and a Marriott Hotel in Anaheim, California. On February 8, 2005, Nancy informed the police of the unauthorized charges.

At the time of trial, Nancy had been married to Darin Rapp for about four years. Appellant was Darin's ex-wife. They had been married about seventeen years ago, and their marriage had lasted for about eight months. They had a child, Alexis Rapp, who was seventeen years old at the time of trial. During the relevant time period, Alexis lived part-time with appellant and the remainder of the time with Nancy and Darin. The evidence showed that Darin provided financial support to appellant throughout the years. For example, Darin testified that he had an American Express card and that he permitted appellant, in his presence, to call in the number of his American Express card to pay utility bills. Darin also permitted appellant to use a low limit credit card that had been issued to him. He also said that "[h]e probably couldn't count how many times [he] wired money to [appellant]."

Appellant testified at trial. She said that she used Nancy's MBNA MasterCard number to make some of the above charges over the internet, including charges of $257.98 and $583.30 to Travelocity, a charge of $1,371.84 to the Marriott Anaheim, and a charge of $261.30 to Southwest Airlines. These charges related to a trip that appellant took to see her son in California in December 2004. Appellant used Nancy's name (Nancy Egan) when she made these charges on the internet. Appellant testified that Nancy never personally consented to her using the card. Appellant said that

3

she made the Travelocity reservation on the computer when Darin, Alexis, and Alexis's friend, Caryn, were present. She also said that Darin Rapp "called out the number with the plus 3 on the card" when she made the reservation. Alexis testified that she was present when appellant made the travel reservations on the computer and that Darin called out the credit card number for appellant to use. Appellant also testified that she may have made some other internet charges on Nancy's card, including ordering from Amazon or Overstock, and that, if she did, "Darin told [her] it was okay to do so."

Nancy testified that she often permitted Darin to use her MBNA MasterCard and that Alexis may have used the card to buy clothes. Alexis testified that, at one time, she had Nancy's credit card number. Alexis did not remember the card's number at the time of trial. Nancy testified that no one other than Darin and Alexis had permission to use the card. Darin testified that Nancy allowed him to use the card from time to time. Darin said that he gave Alexis permission to use the card for a short period of time before Alexis abused the use of the card.

Darin testified that, at times, he gave other people permission to use Nancy's MBNA MasterCard. For example, he said that he permitted Jesse Villarreal, a man who worked for him, to use the card to get things for his business. Darin said that he used drugs in late 1994 and early 1995 and that he let some people use the card in connection with his drug use. These people used the card to obtain gift cards from Wal-Mart, and in exchange for the gift cards, they gave him cocaine. Darin testified that he had been clean for the last two years and three months.

Darin also testified that he never gave appellant permission to use Nancy's credit card and that he never gave appellant Nancy's credit card number. He also specifically denied that he gave appellant the card or its number to make the reservations to travel to California. Darin said that appellant may have obtained Nancy's credit card number from Alexis or from one of his "dope" friends.

Nancy also testified that, on a prior occasion, appellant used her MBNA MasterCard to buy pizza. Nancy said that, after the pizza incident, Darin told appellant not to charge anything on the card. Darin testified that, after appellant used the card to buy pizza, he told her, "You don't ever use that freaking credit card again." With respect to the pizza incident, appellant testified that Alexis and her friends used Nancy's card to purchase the pizza. Appellant said that she signed her name (Sherry Slough) to the receipt for the pizza. Appellant also said that, after the pizza incident, Darin's

4

statement not to use the card again was directed to Alexis and her friends. Alexis testified that she was pretty sure she used Nancy's MasterCard to buy pizza. She also said that, at one time, Darin told her not to use the card to order pizza but that he later gave her permission to use the card to order pizza again.

In February 2005, Mel Francis was a detective for the Midland Police Department. Detective Francis investigated Nancy's complaint that unauthorized charges had been made on her MBNA MasterCard. As part of the investigation, on February 25, 2005, Detective Francis interviewed appellant. Darin was present during the interview. Detective Francis testified that appellant did not deny that she made the charges on Nancy's credit card and that appellant told him she knew she did not have permission to use the card. Detective Francis took a recorded interview of appellant. The interview was played for the jury, and a copy of the recording was introduced into evidence.

Appellant also testified that Darin agreed to pay off the charges that she made on Nancy's credit card with back child support that he owed her. She said that Darin "basically got caught" using Nancy's credit card to help her and that he "needed to cover himself." During his testimony, Darin denied that he ever agreed to pay off the charges with back child support.

Appellant and Darin both testified that they had prior convictions. Appellant testified that she had a prior felony conviction for forgery and using a credit card that was not hers. Darin testified that he had a conviction for delivery of a controlled substance.

Appellant called Lena Sturgis as a witness. Sturgis testified that she saw Darin give credit cards to appellant a number of times so that appellant could pay her bills, buy things that she wanted to buy, or pay for hotel rooms. However, Sturgis did not know whether Darin ever gave appellant Nancy's MBNA MasterCard. Appellant also called Jerry David Stone as a witness. Stone testified that Darin, when talking with him about a credit card being misused, told him, "I did exactly what I had to do to save my marriage." Stone did not provide the jury with an explanation as to what he believed Darin meant by this statement. Stone had never seen Nancy's MBNA MasterCard. He said that he never saw Darin give such a card to appellant and that he never saw or heard Darin give appellant permission to use such a card.

In rebuttal, the State called Tom S. Morgan, a Midland attorney, as a witness. Morgan testified that, several years ago, appellant worked for him for several months. He also testified that appellant's character and reputation for telling the truth were bad.

5

*Analysis*

Appellant argues that the evidence was legally and factually insufficient to establish that she stole a credit card. Section 32.01(4) of the Penal Code defines "steal" as "to acquire property or service by theft." TEX PENAL CODE ANN. § 32.01(4) (Vernon 2003). A person commits the offense of theft "if he unlawfully appropriates property with intent to deprive the owner of property." TEX. PENAL CODE ANN. § 31.03(a) (Vernon Supp. 2008). The term "appropriate" means "to acquire or otherwise exercise control over property other than real property." TEX. PENAL CODE ANN. § 31.01(4)(B) (Vernon Supp. 2008). The appropriation of property is unlawful if "it is without the owner's effective consent." TEX. PENAL CODE ANN. § 31.03(b)(1) (Vernon Supp. 2008).

Appellant testified that Darin gave appellant Nancy's credit card number to make the Travelocity reservation. Alexis provided similar testimony. Darin testified that he did not give appellant the credit card number. The jury, as the sole judge of the credibility of the witnesses and of the weight to be given to their testimony, was entitled to accept Darin's testimony and to reject appellant's and Alexis's testimony. Articles 36.13, 38.04; *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981). Thus, the jury was free to conclude that Darin did not give the credit card or the credit card number to appellant. Based on the evidence, the jury could have reasonably concluded that appellant appropriated the card or its number, without Nancy's consent, when Alexis had possession of the card or its number. The evidence was legally and factually sufficient to establish that appellant stole Nancy's MBNA MasterCard or its number. We overrule appellant's issues.

*This Court's Ruling*

We affirm the trial court's judgment.

TERRY McCALL
JUSTICE

January 30, 2009

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.