Opinion filed August 20, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed August 20,
2009

 

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                  ___________

 

                                                          No. 11-08-00172-CR

                                                    __________

 

                              TIMOTHY DEWAYNE HINES, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                         On
Appeal from the 238th District Court

 

                                                        Midland
County, Texas

 

                                                 Trial
Court Cause No. CR33743

 



 

                                             M
E M O R A N D U M   O P I N I O N

The
jury convicted Timothy Dewayne Hines of the third degree felony offense of
failure to appear.  The trial court found enhancement allegations charging
appellant as a habitual offender to be true and assessed his punishment at
twenty-five years confinement.  We affirm.

The
Charged Offense








A
person commits the offense of failure to appear if he has been Alawfully released from
custody, with or without bail, on condition that he subsequently appear@ and then he Aintentionally or knowingly
fails to appear in accordance with the terms of his release.@  Tex. Penal Code Ann. ' 38.10
(Vernon 2003).  A defense to prosecution for this offense exists if Athe actor had a reasonable
excuse for his failure to appear in accordance with the terms of his release.@  Section 38.10(c). 
An offense is a third degree felony Aif
the offense for which the actor=s
appearance was required is classified as a felony.@  Section 38.10(f).  In this case, the
indictment alleged that, after appellant had been lawfully released from
custody for a felony offense on the condition that he subsequently appear in
court, he intentionally and knowingly failed to appear in court, on June 18,
2007, in accordance with the terms of his release.

                                                                 Issues
on Appeal

Appellant
presents two issues for review.  In his first issue, he challenges the legal
sufficiency of the evidence supporting his conviction.  In his second issue, he
challenges the factual sufficiency of the evidence supporting the rejection of
his defense that he had a reasonable excuse for failing to appear at his trial
setting.

                                                              Standards
of Review

To
determine if the evidence is legally sufficient, we must review all of the
evidence in the light most favorable to the verdict and determine whether any rational
trier of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979); Hooper
v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); Jackson v. State,
17 S.W.3d 664, 667 (Tex. Crim. App. 2000).  To determine if the evidence is
factually sufficient to support the rejection of a defense, we review all of
the evidence in a neutral light and determine whether the State=s evidence taken alone is
too weak to support the rejection of the defense and whether the proof of
guilt, although adequate if taken alone, is against the great weight and
preponderance of the evidence.  Zuliani v. State, 97 S.W.3d 589, 595
(Tex. Crim. App. 2003).  The jury, as the finder of fact, is the sole judge of
the weight and credibility of the witnesses=
testimony.  Tex. Code Crim. Proc. Ann.
art. 36.13 (Vernon 2007), art. 38.04 (Vernon 1979).

       
                                            Evidence at Trial

In
December 2006, appellant was indicted for the felony offense of burglary of a
habitation.  Appellant=s
burglary of a habitation case was pending in the 238th District Court of
Midland County. On June 5, 2007, appellant was released from custody on that
charge on an instanter bond.  The bond provided, in part, as follows: 








THE CONDITION OF
THIS BOND is that the defendant has been charged with a (felony) offense and to
secure his release from custody is entering into this obligation binding him to
appear before DISTRICT Court of MIDLAND County, Texas, with FELONY: 
BURGLARY OF HABITATION FELONY 2.

 

Now,
if the said [appellant] shall well and truly make [his] appearance before the DISTRICT
COURT of MIDLAND County, Texas at the next term of said Court, at MIDLAND,
TEXAS on the _____ day of INSTANTER  20     at         
o=clock      m,
and there remain from day to day and term to term, until discharged by due
course of law, then and there to answer said accusation and any and all
subsequent proceedings had relative to the charge against [him], then this
obligation shall become null and void; otherwise to remain in full force and
effect.

 

Appellant
signed the bond agreement in the capacity of principal on the bond.  Tom
Barker, the owner of ASA Bonding, signed the bond agreement on behalf of ASA
Bonding, the surety on the bond.  Barker testified that the term Ainstanter@ was used in the bond
because there was no court date at the time of appellant=s release from custody.  Barker said that Ainstanter@ means to show up Awhen it=s called to court.@

On
June 6, 2007, the trial court issued an order setting appellant=s burglary of a habitation
case for jury trial on June 18, 2007, at 9:00 a.m.  The district clerk sent a
copy of the order to appellant=s
counsel.  Appellant=s
counsel testified that he told appellant about the June 18, 2007 trial setting
and that he gave appellant a copy of the order.  Appellant testified that his
counsel told him about the June 18, 2007 trial setting.

Barker
testified that he received notice of appellant=s
June 18, 2007 trial setting.  He said that ASA Bonding tried to locate
appellant to let him know about the setting but that ASA Bonding could not
locate him.  Based on the inability to locate appellant, on June 13, 2007, ASA
Bonding filed a motion requesting the court to issue a warrant for appellant=s arrest.  On June 15,
2007, the court granted ASA Bonding=s
motion and ordered that a warrant be issued for the arrest of appellant.  The
court stated the following in the order:

If [appellant] is
timely arrested and surrendered to the Court before a final judgment of
forfeiture is entered against [ASA Bonding], then [ASA Bonding] shall be
released from the bond of [appellant] in this cause provided [ASA Bonding has]
timely paid the reasonable costs for the arrest and transportation expense of
[appellant] to the custody of the Midland County Sheriff.

 








Upon the return
of [appellant] to the custody of the Sheriff of Midland County, Texas, the
surety, ASA BONDING, shall be released from the bond of [appellant]. 

 

Also on June 15,
2007, the trial court issued a warrant for the arrest of appellant.  The record
shows that appellant was not arrested before the date of his trial setting.  

On
June 18, 2007, the trial court called appellant=s
case for trial.  The evidence was undisputed that appellant failed to appear in
court for the trial setting.  Appellant admitted that he did not appear for the
setting.

On
June 26, 2007, Midland Police Officers Rosemary Moreno and Augusto Albo were
dispatched to the Parkland Apartments on Camp Drive in reference to two
subjects sleeping in a vehicle that was parked in the parking lot of the
apartment complex.  Upon arriving at the scene, the officers located a gold
vehicle and saw a man and a woman sleeping in it.  The officers woke up the
individuals.  Both officers testified that the man identified himself as ARicky Perkins.@  Officer Albo testified
that the man said his date of birth was September 5, 1967.  Officer Albo
testified that the woman identified herself as Christina Ann Green and that she
said her date of birth was February 12,  1981.  Officer Albo said that the
officers ran the identifying information that the man had given them on the
National Crime Information Center system and that A[h]e was not in the system.@  Officer Moreno testified
that she asked Green the man=s
name and that Green told her the man=s
name was Timothy Hines.  The officers arrested appellant.  Appellant testified
that he told the officers his real name.  He said that Green told the officers that
his name was ARicky
Perkins.@








Appellant
testified that he knew his trial setting was Aa
very important event.@ 
Appellant said that he had been treated for depression.  He introduced into
evidence a copy of a record from the Permian Basin Community Centers showing
that he received prescriptions for Prozac and Seroquel on June 4, 2007.  On
that date, appellant was in jail.  Appellant said that, on June 5, 2007, he
bonded out of jail.  Appellant said that, after bonding out of jail, he lived
at his mother=s house
with his mother and stepfather.  He also said that he began taking Prozac and
Seroquel on June 5, 2007.  Appellant testified that he took the medications as
directed.  He said that he had been unable to get a good night=s sleep before he started
taking the medications but that he had been able to sleep after he started
taking them.  Appellant testified that he took Seroquel Aat say 9:00 to 9:10 at night, and for quite
sometime [he] wouldn=t
wake up until 1:00, maybe 2:00 o=clock
the next day sometimes, sometimes 11:00.@

Appellant
testified that his mother went on vacation on June 16, 2007.  He said that
there was a good possibility that he would be the only one at home on the
morning of his trial setting because of his stepfather=s work schedule.  Appellant said that, based
on this possibility, he set an alarm clock for 7:00 a.m. on the morning of his
trial setting.  Appellant said that, however, he overslept and did not wake up
until 11:50 a.m.  He testified that the alarm was going off when he woke up. He
said that he was alone in the house at the time.  Appellant testified that he
called his girlfriend and she suggested that he call his counsel.  Appellant
said that he called his counsel=s
office.  He said that he spoke to his counsel=s
secretary and she told him his counsel was not in the office.  Appellant said
that he called his counsel=s
office again at about 4:30 p.m. but his counsel was not in the office. He also
said that he called ASA Bonding on the day of the trial setting and he spoke to
a receptionist.  He said that he did not tell the receptionist he had missed
his trial setting.  Appellant said he did not call the judge=s office on the day of the
trial setting because he was not thinking clearly.  Appellant testified that,
if he had not taken his medication, he would have been at his trial setting.

Appellant
called Lynne Kramer, a registered nurse, as a witness.  She testified that one
of the side effects of Seroquel is somnolence.  She said that somnolence is Amore than sleepy, it is a
state in which someone is asleep and a little difficult to arouse.@  Kramer testified that the
results of one study showed that 34% of the users of Seroquel experienced
somnolence as an adverse side effect. 

                                                                        Analysis








In
his first issue, appellant challenges the legal sufficiency of the evidence. 
To support his argument, appellant relies on the language in his bond that he
would Amake [his]
appearance . . . at the next term of said Court.@ 
The record shows that appellant signed his bond agreement on June 5, 2007. 
Appellant cites Tex. Gov=t Code Ann. ' 24.302 (Vernon 2004) for the proposition that
the next term of court of the 238th District Court would have begun on the
first Monday in July 2007.  See Section 24.302 provides that A[e]ach district court holds
in each county within its jurisdiction terms that commence on the first Mondays
in January and July of each year.@ 
Appellant asserts that, under Section 24.302, the earliest his bond could have
required him to appear for court was on the first Monday in July 2007 and that,
therefore, the terms of his bond did not require him to appear for the June 18,
2007 trial setting.  Appellant contends that, because his bond did not obligate
him to appear for the June 18, 2007 trial setting, the evidence is legally
insufficient to support his conviction.          In essence, appellant=s legal sufficiency
argument is based on the contention that appearing for the June 18, 2007 trial
setting was not a term of his release because the terms of his bond did not
require him to appear for that setting.  We disagree for two reasons.  First,
courts may look beyond the face of the bond in determining whether a defendant
received sufficient notice of a trial setting.  Bell v. State, 63 S.W.3d
529, 532 (Tex. App.CTexarkana
2001, pet. ref=d) (AThe instanter bond is not
the only evidence of a defendant=s
actual notice.@). 
Second, because appellant=s
bond required him to appear Ainstanter@ and because appellant did
not present any evidence showing that he lacked actual notice of the June 18,
2007 trial setting, the evidence was legally sufficient to support his
conviction.  Richardson v. State, 699 S.W.2d 235, 238 (Tex. App.CAustin 1985, pet. ref=d).       

Generally,
an instanter bond gives proper notice as to when a defendant is to appear in
court and, in the absence of a reasonable excuse for a failure to appear, is
sufficient to prove that the defendant intentionally and knowingly failed to
appear in accordance with the terms of his release.  Euziere v. State,
648 S.W.2d 700, 702 (Tex. Crim. App. 1983); Bell, 63 S.W.3d at 531.  Proof
that a defendant was free pursuant to an instanter bond constitutes a prima
facie showing that he had notice of the proceeding at which he failed to
appear.  Richardson, 699 S.W.2d at 238.  This prima facie showing
satisfies the State=s
burden of proving a culpable mental state in the absence of any evidence to the
contrary.  Id.  However, if there is evidence that the defendant did
not, in fact, have notice of the proceeding in question, the State must do more
than prove the terms of the bond to meet its burden of proving an intentional
or knowing failure to appear. Id.  In such cases, the State must offer
evidence that the defendant did have actual notice, or that he engaged in a
course of conduct designed to prevent him from receiving notice.  Id.; see
also Bell, 63 S.W.3d at 532.

In
this case, there was no evidence that appellant did not have actual notice of
the June 18, 2007, trial setting.  To the contrary, the undisputed evidence
showed that appellant had actual notice of the setting.  The evidence was
legally sufficient to support appellant=s
conviction.








Appellant
apparently argues in his legal sufficiency issue that he had no obligation
under his bond to appear for his trial setting because ASA Bonding Awent off his bond@ before the trial setting. 
The evidence showed that ASA Bonding filed a motion requesting the court to
issue a warrant for the arrest of appellant and that, on June 15, 2007, the
court granted ASA Bonding=s
motion and issued a warrant for appellant=s
arrest.  The trial court=s
order provided that ASA Bonding would be released from appellant=s bond upon the return of
appellant to the custody of the Midland County Sheriff.  Appellant was not
arrested until June 26, 2007, eight days after his trial setting.  Because
appellant was not arrested and returned to the custody of the Midland County
Sheriff on the date of his trial setting, ASA Bonding remained obligated on his
bond on that date.  However, even if ASA Bonding had been released from its
obligations on appellant=s
bond before the trial setting, the release of ASA Bonding from its obligations
would have had no effect on appellant=s
obligation to appear for his trial.  Because the evidence was legally
sufficient to support appellant=s
conviction, we overrule his first issue.

In
his second issue, appellant challenges the factual sufficiency of the evidence
to support the rejection of his defense that he had a reasonable excuse for
failing to appear at his trial setting.  Appellant attempted to establish that
he overslept on the morning of his trial setting as a result of taking his
prescription medications.  Kramer testified that somnolence is one of the
adverse side effects of Seroquel.  Appellant testified that he started taking
Prozac and Seroquel on June 5, 2007 and that, after he started taking them, he
sometimes did not wake up until one or two o=clock
the next day.  He also testified that he did not wake up until 11:50 a.m. on
the morning of his trial setting.  Appellant said that he did not call the
judge=s office at that
time because he was not thinking clearly.  Based on the evidence relating to
his prescription medications, appellant contended that he had a reasonable
excuse for failing to appear.








Appellant
was the only witness who testified that his prescription medications had affected
his sleep pattern, that he was at his mother=s
house on the morning of his trial setting, that he was alone at her house, that
he overslept on the morning of his trial setting, and that he had intended to
appear for the trial setting.  The jury, as the sole judge of the credibility
of the witnesses and the weight to be given their testimony, was entitled to
reject appellant=s
testimony.  Penagraph v. State, 623 S.W.2d 341, 343 (Tex. Crim. App.
1981); Slough v. State, 279 S.W.3d 409, 413 (Tex. App.CEastland 2009, pet. ref=d).  Additionally, even if
the jury believed appellant=s
testimony, the jury could have reasonably concluded that appellant did not have
a reasonable excuse for his failure to appear.  The State presented strong
evidence of appellant=s
guilt.  Appellant admitted that he had notice of his trial setting.  Appellant=s testimony, if believed,
demonstrated that he knew his prescription medications affected his sleeping
pattern.  Given this fact, the jury may have believed that appellant should
have done more than set an alarm clock in an effort to make sure that he woke
up in time for his trial setting.  Appellant could have requested his mother to
call him, or he could have made arrangements for someone else to wake him up. 
However, appellant did neither.

Viewing
all the evidence in a neutral light, we conclude that the evidence is factually
sufficient to support the jury=s
rejection of appellant=s
defense that he had a reasonable excuse for his failure to appear.  We overrule
appellant=s second
issue.

                                                               This
Court=s Ruling

We
affirm the trial court=s
judgment.

 

 

TERRY McCALL

JUSTICE

 

August 20, 2009

Do not publish. 
See Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.