**Opinion filed August 20, 2009**



In The

# Eleventh Court of Appeals

_____

## No. 11-08-00172-CR

_____

## TIMOTHY DEWAYNE HINES, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 238th District Court**

**Midland County, Texas**

**Trial Court Cause No. CR33743**

## M E M O R A N D U M   O P I N I O N

The jury convicted Timothy Dewayne Hines of the third degree felony offense of failure to appear.  The trial court found enhancement allegations charging appellant as a habitual offender to be true and assessed his punishment at twenty-five years confinement.  We affirm.

*The Charged Offense*

A person commits the offense of failure to appear if he has been "lawfully released from custody, with or without bail, on condition that he subsequently appear" and then he "intentionally or knowingly fails to appear in accordance with the terms of his release."  TEX. PENAL CODE ANN. § 38.10 (Vernon 2003).  A defense to prosecution for this offense exists if "the actor had a

reasonable excuse for his failure to appear in accordance with the terms of his release." Section 38.10(c). An offense is a third degree felony "if the offense for which the actor's appearance was required is classified as a felony." Section 38.10(f). In this case, the indictment alleged that, after appellant had been lawfully released from custody for a felony offense on the condition that he subsequently appear in court, he intentionally and knowingly failed to appear in court, on June 18, 2007, in accordance with the terms of his release.

*Issues on Appeal*

Appellant presents two issues for review. In his first issue, he challenges the legal sufficiency of the evidence supporting his conviction. In his second issue, he challenges the factual sufficiency of the evidence supporting the rejection of his defense that he had a reasonable excuse for failing to appear at his trial setting.

*Standards of Review*

To determine if the evidence is legally sufficient, we must review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *Jackson v. State*, 17 S.W.3d 664, 667 (Tex. Crim. App. 2000). To determine if the evidence is factually sufficient to support the rejection of a defense, we review all of the evidence in a neutral light and determine whether the State's evidence taken alone is too weak to support the rejection of the defense and whether the proof of guilt, although adequate if taken alone, is against the great weight and preponderance of the evidence. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). The jury, as the finder of fact, is the sole judge of the weight and credibility of the witnesses' testimony. TEX. CODE CRIM. PROC. ANN. art. 36.13 (Vernon 2007), art. 38.04 (Vernon 1979).

*Evidence at Trial*

In December 2006, appellant was indicted for the felony offense of burglary of a habitation. Appellant's burglary of a habitation case was pending in the 238th District Court of Midland County. On June 5, 2007, appellant was released from custody on that charge on an instanter bond. The bond provided, in part, as follows:

> THE CONDITION OF THIS BOND is that the defendant has been charged with a (felony) offense and to secure his release from custody is entering into this obligation

2

binding him to appear before <u>DISTRICT</u> Court of <u>MIDLAND</u> County, Texas, with <u>FELONY: BURGLARY OF HABITATION FELONY 2.</u>

Now, if the said [appellant] shall well and truly make [his] appearance before the <u>DISTRICT COURT</u> of <u>MIDLAND</u> County, Texas at the next term of said Court, at <u>MIDLAND, TEXAS</u> on the _____ day of **INSTANTER** 20___ at_____ o'clock __m, and there remain from day to day and term to term, until discharged by due course of law, then and there to answer said accusation and any and all subsequent proceedings had relative to the charge against [him], then this obligation shall become null and void; otherwise to remain in full force and effect.

Appellant signed the bond agreement in the capacity of principal on the bond. Tom Barker, the owner of ASA Bonding, signed the bond agreement on behalf of ASA Bonding, the surety on the bond. Barker testified that the term "instanter" was used in the bond because there was no court date at the time of appellant's release from custody. Barker said that "instanter" means to show up "when it's called to court."

On June 6, 2007, the trial court issued an order setting appellant's burglary of a habitation case for jury trial on June 18, 2007, at 9:00 a.m. The district clerk sent a copy of the order to appellant's counsel. Appellant's counsel testified that he told appellant about the June 18, 2007 trial setting and that he gave appellant a copy of the order. Appellant testified that his counsel told him about the June 18, 2007 trial setting.

Barker testified that he received notice of appellant's June 18, 2007 trial setting. He said that ASA Bonding tried to locate appellant to let him know about the setting but that ASA Bonding could not locate him. Based on the inability to locate appellant, on June 13, 2007, ASA Bonding filed a motion requesting the court to issue a warrant for appellant's arrest. On June 15, 2007, the court granted ASA Bonding's motion and ordered that a warrant be issued for the arrest of appellant. The court stated the following in the order:

> If [appellant] is timely arrested and surrendered to the Court before a final judgment of forfeiture is entered against [ASA Bonding], then [ASA Bonding] shall be released from the bond of [appellant] in this cause provided [ASA Bonding has] timely paid the reasonable costs for the arrest and transportation expense of [appellant] to the custody of the Midland County Sheriff.

3

Upon the return of [appellant] to the custody of the Sheriff of Midland County, Texas, the surety, ASA BONDING, shall be released from the bond of [appellant].

Also on June 15, 2007, the trial court issued a warrant for the arrest of appellant. The record shows that appellant was not arrested before the date of his trial setting.

On June 18, 2007, the trial court called appellant's case for trial. The evidence was undisputed that appellant failed to appear in court for the trial setting. Appellant admitted that he did not appear for the setting.

On June 26, 2007, Midland Police Officers Rosemary Moreno and Augusto Albo were dispatched to the Parkland Apartments on Camp Drive in reference to two subjects sleeping in a vehicle that was parked in the parking lot of the apartment complex. Upon arriving at the scene, the officers located a gold vehicle and saw a man and a woman sleeping in it. The officers woke up the individuals. Both officers testified that the man identified himself as "Ricky Perkins." Officer Albo testified that the man said his date of birth was September 5, 1967. Officer Albo testified that the woman identified herself as Christina Ann Green and that she said her date of birth was February 12, 1981. Officer Albo said that the officers ran the identifying information that the man had given them on the National Crime Information Center system and that "[h]e was not in the system." Officer Moreno testified that she asked Green the man's name and that Green told her the man's name was Timothy Hines. The officers arrested appellant. Appellant testified that he told the officers his real name. He said that Green told the officers that his name was "Ricky Perkins."

Appellant testified that he knew his trial setting was "a very important event." Appellant said that he had been treated for depression. He introduced into evidence a copy of a record from the Permian Basin Community Centers showing that he received prescriptions for Prozac and Seroquel on June 4, 2007. On that date, appellant was in jail. Appellant said that, on June 5, 2007, he bonded out of jail. Appellant said that, after bonding out of jail, he lived at his mother's house with his mother and stepfather. He also said that he began taking Prozac and Seroquel on June 5, 2007. Appellant testified that he took the medications as directed. He said that he had been unable to get a good night's sleep before he started taking the medications but that he had been able to sleep after he started taking them. Appellant testified that he took Seroquel "at say 9:00 to 9:10 at night, and

4

for quite sometime [he] wouldn't wake up until 1:00, maybe 2:00 o'clock the next day sometimes, sometimes 11:00."

Appellant testified that his mother went on vacation on June 16, 2007. He said that there was a good possibility that he would be the only one at home on the morning of his trial setting because of his stepfather's work schedule. Appellant said that, based on this possibility, he set an alarm clock for 7:00 a.m. on the morning of his trial setting. Appellant said that, however, he overslept and did not wake up until 11:50 a.m. He testified that the alarm was going off when he woke up. He said that he was alone in the house at the time. Appellant testified that he called his girlfriend and she suggested that he call his counsel. Appellant said that he called his counsel's office. He said that he spoke to his counsel's secretary and she told him his counsel was not in the office. Appellant said that he called his counsel's office again at about 4:30 p.m. but his counsel was not in the office. He also said that he called ASA Bonding on the day of the trial setting and he spoke to a receptionist. He said that he did not tell the receptionist he had missed his trial setting. Appellant said he did not call the judge's office on the day of the trial setting because he was not thinking clearly. Appellant testified that, if he had not taken his medication, he would have been at his trial setting.

Appellant called Lynne Kramer, a registered nurse, as a witness. She testified that one of the side effects of Seroquel is somnolence. She said that somnolence is "more than sleepy, it is a state in which someone is asleep and a little difficult to arouse." Kramer testified that the results of one study showed that 34% of the users of Seroquel experienced somnolence as an adverse side effect.

*Analysis*

In his first issue, appellant challenges the legal sufficiency of the evidence. To support his argument, appellant relies on the language in his bond that he would "make [his] appearance . . . at the next term of said Court." The record shows that appellant signed his bond agreement on June 5, 2007. Appellant cites TEX. GOV'T CODE ANN. § 24.302 (Vernon 2004) for the proposition that the next term of court of the 238th District Court would have begun on the first Monday in July 2007. *See* Section 24.302 provides that "[e]ach district court holds in each county within its jurisdiction terms that commence on the first Mondays in January and July of each year." Appellant asserts that, under Section 24.302, the earliest his bond could have required him to appear for court was on the first Monday in July 2007 and that, therefore, the terms of his bond did not require him

5

to appear for the June 18, 2007 trial setting. Appellant contends that, because his bond did not obligate him to appear for the June 18, 2007 trial setting, the evidence is legally insufficient to support his conviction. In essence, appellant's legal sufficiency argument is based on the contention that appearing for the June 18, 2007 trial setting was not a term of his release because the terms of his bond did not require him to appear for that setting. We disagree for two reasons. First, courts may look beyond the face of the bond in determining whether a defendant received sufficient notice of a trial setting. *Bell v. State*, 63 S.W.3d 529, 532 (Tex. App.—Texarkana 2001, pet. ref'd) ("The instanter bond is not the only evidence of a defendant's actual notice."). Second, because appellant's bond required him to appear "instanter" and because appellant did not present any evidence showing that he lacked actual notice of the June 18, 2007 trial setting, the evidence was legally sufficient to support his conviction. *Richardson v. State*, 699 S.W.2d 235, 238 (Tex. App.—Austin 1985, pet. ref'd).

Generally, an instanter bond gives proper notice as to when a defendant is to appear in court and, in the absence of a reasonable excuse for a failure to appear, is sufficient to prove that the defendant intentionally and knowingly failed to appear in accordance with the terms of his release. *Euziere v. State*, 648 S.W.2d 700, 702 (Tex. Crim. App. 1983); *Bell*, 63 S.W.3d at 531. Proof that a defendant was free pursuant to an instanter bond constitutes a prima facie showing that he had notice of the proceeding at which he failed to appear. *Richardson*, 699 S.W.2d at 238. This prima facie showing satisfies the State's burden of proving a culpable mental state in the absence of any evidence to the contrary. *Id.* However, if there is evidence that the defendant did not, in fact, have notice of the proceeding in question, the State must do more than prove the terms of the bond to meet its burden of proving an intentional or knowing failure to appear. *Id.* In such cases, the State must offer evidence that the defendant did have actual notice, or that he engaged in a course of conduct designed to prevent him from receiving notice. *Id.*; *see also Bell*, 63 S.W.3d at 532.

In this case, there was no evidence that appellant did not have actual notice of the June 18, 2007, trial setting. To the contrary, the undisputed evidence showed that appellant had actual notice of the setting. The evidence was legally sufficient to support appellant's conviction.

Appellant apparently argues in his legal sufficiency issue that he had no obligation under his bond to appear for his trial setting because ASA Bonding "went off his bond" before the trial setting.

6

The evidence showed that ASA Bonding filed a motion requesting the court to issue a warrant for the arrest of appellant and that, on June 15, 2007, the court granted ASA Bonding's motion and issued a warrant for appellant's arrest. The trial court's order provided that ASA Bonding would be released from appellant's bond upon the return of appellant to the custody of the Midland County Sheriff. Appellant was not arrested until June 26, 2007, eight days after his trial setting. Because appellant was not arrested and returned to the custody of the Midland County Sheriff on the date of his trial setting, ASA Bonding remained obligated on his bond on that date. However, even if ASA Bonding had been released from its obligations on appellant's bond before the trial setting, the release of ASA Bonding from its obligations would have had no effect on appellant's obligation to appear for his trial. Because the evidence was legally sufficient to support appellant's conviction, we overrule his first issue.

In his second issue, appellant challenges the factual sufficiency of the evidence to support the rejection of his defense that he had a reasonable excuse for failing to appear at his trial setting. Appellant attempted to establish that he overslept on the morning of his trial setting as a result of taking his prescription medications. Kramer testified that somnolence is one of the adverse side effects of Seroquel. Appellant testified that he started taking Prozac and Seroquel on June 5, 2007 and that, after he started taking them, he sometimes did not wake up until one or two o'clock the next day. He also testified that he did not wake up until 11:50 a.m. on the morning of his trial setting. Appellant said that he did not call the judge's office at that time because he was not thinking clearly. Based on the evidence relating to his prescription medications, appellant contended that he had a reasonable excuse for failing to appear.

Appellant was the only witness who testified that his prescription medications had affected his sleep pattern, that he was at his mother's house on the morning of his trial setting, that he was alone at her house, that he overslept on the morning of his trial setting, and that he had intended to appear for the trial setting. The jury, as the sole judge of the credibility of the witnesses and the weight to be given their testimony, was entitled to reject appellant's testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981); *Slough v. State*, 279 S.W.3d 409, 413 (Tex. App.—Eastland 2009, pet. ref'd). Additionally, even if the jury believed appellant's testimony, the jury could have reasonably concluded that appellant did not have a reasonable excuse for his failure

7

to appear.  The State presented strong evidence of appellant's guilt.  Appellant admitted that he had notice of his trial setting.  Appellant's testimony, if believed, demonstrated that he knew his prescription medications affected his sleeping pattern.  Given this fact, the jury may have believed that appellant should have done more than set an alarm clock in an effort to make sure that he woke up in time for his trial setting.  Appellant could have requested his mother to call him, or he could have made arrangements for someone else to wake him up.  However, appellant did neither.

Viewing all the evidence in a neutral light, we conclude that the evidence is factually sufficient to support the jury's rejection of appellant's defense that he had a reasonable excuse for his failure to appear.  We overrule appellant's second issue.

*This Court's Ruling*

We affirm the trial court's judgment.


TERRY McCALL

JUSTICE


August 20, 2009

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of:  Wright, C.J.,
McCall, J., and Strange, J.

8